UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

DONNA R.,[1]

               **Plaintiff,**                      **Case No. 3:24-cv-8578**
                                            **Magistrate Judge Cheryl L. Pollak**

     v.

**FRANK BISIGNANO,**
**Commissioner of Social Security,**

               **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Donna R. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying Plaintiff's application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court affirms the Commissioner's decision.

## I.    PROCEDURAL HISTORY

On July 12, 2021, Plaintiff filed applications for disability insurance benefits and supplemental security income, alleging that she had been disabled since an alleged onset date of

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Frank Bisignano, the Commissioner of Social Security, is substituted as Defendant in his official capacity.

1

July 12, 2020. R. 229–44, 250–60. Plaintiff's applications were denied initially and upon reconsideration. R. 110–29, 134–51. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 153–54. ALJ Timothy Belford held a hearing on August 23, 2023, at which Plaintiff, who was represented by counsel, appeared and testified, as did a vocational expert. R. 32–47. In a decision dated October 6, 2023, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from July 12, 2020, the alleged onset date, through the date of that decision. R. 14–25. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on July 11, 2024. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On April 22, 2025, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 15.[3] On April 20, 2026, the case was reassigned to the undersigned. ECF No. 17. The matter is now ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g) & 1383(c)(3). The United States Supreme Court has explained this standard as follows:

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9,

2016).  The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight."  *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4.  The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict."  *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although the ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).  Absent

4

such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explained:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518. In assessing whether the record is fully developed to support an award of benefits, courts take a more liberal approach when the claimant has already faced long processing delays. *See, e.g., Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). An award is "especially appropriate when "further administrative proceedings would

simply prolong [Plaintiff's] waiting and delay his ultimate receipt of benefits." *Podedworny*, 745 F.2d at 223; *see Schonewolf*, 972 F. Supp. at 290.

B.      **Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III.    ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 57 years old on her alleged disability onset date. R. 69, 77, 87, 95. Plaintiff reported working as a cashier at a hospital from 2010 to 2020. R. 287.  Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2025. R. 16. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between July 12, 2020, her alleged onset date, and the date of the decision. *Id*.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: lumbar spine disorder; osteoarthritis of the back, hands, hips, and knees; and depressive disorder. *Id*. The ALJ also found that Plaintiff's medically determinable impairment of migraines was not severe. R. 17.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 17–19.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to

7

various exertional and non-exertional limitations. R. 19–25. The ALJ explained that although the record demonstrates a musculoskeletal history of prior back pain, with surgical intervention, recent objective medical findings, along with the current course of treatment and relevant clinical assessments, are consistent with Plaintiff being able to sustain a range of light exertional work. R. 20. Similarly, with respect to Plaintiff's psychiatric status, the ALJ found that, based on a minimal course of treatment and inconsistent non-medical evidence, there was nothing in the record to demonstrate a clinically relevant deterioriation. R. 22. Thus, the ALJ concluded that restriction to simple and detailed job tasks was consistent with the evidence. *Id.* He also found that this RFC permitted the performance of Plaintiff's past relevant work as a retail sales clerk. R. 25. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from July 12, 2020, her alleged onset date, through the date of the decision. *Id*.

Plaintiff disagrees with the ALJ's findings at step four and asks that the decision of the Commissioner be reversed and remanded for further proceedings. *Plaintiff's Memorandum of Law*, ECF No. 7 ("Pl.'s Mem."); *Plaintiff's Reply Brief*, ECF No. 10 ("Pl.'s Reply"). The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief*, ECF No. 9 ("D.'s Br.").

## IV.    SUMMARY OF RELEVANT MEDICAL EVIDENCE

### A.    Orthopedic Consultative Examination

On March 8, 2022, Rashel Potashnik, M.D. CPMR conducted an orthopedic consultative examination. R. 460–66. Dr. Potashnik noted that Plaintiff reported that she injured her low back

in 2001. R. 460. He also noted Plaintiff's complaints of low back pain radiating to the left leg to the foot and at times to the right knee, which she stated caused difficulty sitting, bending, and standing. *Id*. (recording her reports that she had two back surgeries "many years ago"; underwent spinal cord stimulator ("SCS") placement and removal a year later; and had physical therapy and lumbar epidural steroid injections ("LESI") without relief). Plaintiff reported that she lives alone, drives, and worked in a gift shop of a medical center until 2019. *Id*.

Upon physical examination, Dr. Potashnik observed that Plaintiff entered the office without assistive device with cautious gait; she could squat 1/3, and stood on heels and tiptoes. *Id*. Dr. Potashnik's examination revealed normal range of motions in the cervical spine, shoulders, elbow, wrist, hand, hip, knees, ankles, and great toes, and normal grip strength. R. 460, 464–65. A lumbar spine exam revealed lower lumbar paravertebral scars and generalized tenderness on palpation; Dr. Potashnik deferred the exam in the supine position due to Plaintiff's complaints of back pain in that position. R. 460. Plaintiff's lumbar range of motion was 45 degrees on forward flexion, 5 degrees on extension, and her straight leg raises were negative bilaterally while sitting. *Id*. Plaintiff's upper extremities and right lower extremity had normal strength and her left lower extremity had 4, 4+/5 strength. *Id*. Dr. Potashnik's sensory exam revealed bilateral paresthesias, more so distally and left more pronounced than right. *Id*. Plaintiff's motor sensory reflexes ("MSRs") were 3+ from the knees and unobtainable from the ankles. *Id*. Dr. Potashnik indicated that Plaintiff's effort on the exam was fair. R. 465 (selecting fair out of choices, good, fair, and poor).

In connection with this consultative examination, several x-rays were taken. R. 460–63. An X-ray of the lumbar spine showed findings of dextroscoliosis, multilevel very mild degenerative changes, and status post L5-S1 posterior fusion with an interbody device. *Id*.

9

Radiographs of the bilateral knees showed an unremarkable study to the left knee and only a few minimal degenerative changes of the right knee. *Id*.

### B.  Psychological Consultative Examination

On March 14, 2022, Christopher Williamson, Psy.D. conducted a psychological consultative examination based on a referral with regard to prior allegations of "'major depressive disorder, osteoarthritis, sciatica, insomnia, and migraine headaches.'" R. 467–70. Dr. Williamson noted that Plaintiff has an active driver's license and drove herself to the examination. R. 468. Upon mental examination, Dr. Williamson reported and observed as follows:

> [Plaintiff] presents for evaluation as a 59-year-old female. She arrived on time as scheduled. She was casually dressed and groomed, appearing her stated age. She was pleasant and cooperative throughout. There was no evidence of a formal thought disorder. There were no noted compulsions of thinking and/or behavior. Verbalizations were clear, coherent, and goal-directed. She appeared physically uncomfortable. She had noticeable ambulation difficulties. She sat rocking throughout the evaluation. She was unable to sit still. Her overall mood appeared depressed and anxious. Her affect was congruent throughout. She has a history of suicidal ideation but denies any current plan or intent. She denies any issues of substance use or abuse. She appeared to be in despair. She could repeat up to 5 digits forwards and 4 digits backwards. She was unable to accurately complete Serial 7's, subtracting 7 from 100 in reverse order. She could complete simple mathematical calculations of addition and subtraction. Her overall fund of knowledge appeared to be in the average range. Abstract reasoning appeared dull. She was well oriented to time, place, and person, as well as recent current events. She could recall 0 out of 3 common objects at 5- and 10-minute intervals.

*Id*. He diagnosed psychiatric and physical impairments:

| | |
|---|---|
| AXIS I: | Major Depressive Disorder, recurrent. Panic Disorder. |
| AXIS II: | Deferred. |
| AXIS III: | Chronic leg pain, weakness, two back surgeries, osteoarthritis of the back, hands, hips and knees, sciatica, insomnia, and migraine headaches. |
| AXIS IV: | Financial, housing, and employment. Chronic medical and ongoing psychiatric concerns. |

*Id*. Dr. Williamson went on to conclude that, based on his interactions with Plaintiff, "it does appear that she is competent to handle her own funds despite her limitations. Her overall prognosis remains guarded due to the chronicity and severity of her symptom presentation." *Id*.

### C.    State Agency Reviewing Psychological Consultants

Ada Liberant, Psy.D. conducted an initial review of Plaintiff's medical record on behalf of the state agency on April 8, 2022. R. 69–84. Dr. Liberant found that Plaintiff had severe depressive, bipolar, and related disorders. R. 71, 79. In considering the paragraph B criteria for Listings 12.04 and 12.06, Dr. Liberant found that Plaintiff had a moderate limitation in her ability to concentrate, persist, or maintain pace, but mild limitations in the remaining three broad areas of functioning: understand, remember, or apply information; interact with others; and adapt or manage oneself. *Id*. Under the heading "MRFC Additional Explanation[,]" Dr. Liberant opined as follows:

> 59 yo woman alleging disability due to MDD and other physical ailments. Prior denials with MDIs of 12.04. 12.06 and 12.07. Clmt has residual functional capacity to perform sedentary work. Ce: Christopher Williamson: last worked in july [sic] 2020 at a local hospital gift shop. Has been treated psychiatrically treated in her 30s going through divorce. Victim of IPV [intimate partner violence]. Two children who were abused. Reported depression, anxiety and panic attacks. Lives independently. Not currently in relp. She has an active DL and drove herself to apt. MSCE: mood depressed and anxious. Appeared to be in despair. Could do 5df and 4db. Unable to do serial 7s. could do simple math. Oriented to 3. Able to recall 0/3 after 5-10 min. Dx MDD, recurrent, panic disorder. Clmt capable. MER Physical rehab center: Hx +for anxiety and depression. ADL report: always in pain. She is depressed and anxious. Able to care of animals. Self care affected by pain. Makes frozen meals. Lives alone and able to clean but does it rarely. Does laundry. Able to drive a car. Able to pay bills/manage money. Able to comprehend instructions well both written and spoken. Not on psych meds. In 2019 as per ME[R] was on Zoloft. *Within the limitations as above, claimant is able to follow simple instructions, able to sustain mental pace and persistence, concentration and attention for simple repetitive tasks during a normal workday, and adapt to work like settings.*

R. 74 (emphasis added), 82 (same).

11

Michael Plasay, Ph.D. reviewed Plaintiff's medical record upon reconsideration for the state agency on October 8, 2022. R. 87–102. He agreed with Dr. Liberant that Plaintiff had severe depressive, bipolar, and related disorders, and in considering the paragraph B criteria for Listings 12.04 and 12.06, that Plaintiff had a moderate limitation in her ability to concentrate, persist, or maintain pace, and only mild limitations in the remaining three broad areas of functioning. R. 88–89, 96–97. Under the heading "MRFC Additional Explanation[,]" Dr. Plasay noted that there was no updated medical evidence or treatment and affirmed Dr. Liberant's finding, explaining that "[p]revious MER was reviewed along with any additional mental evidence obtained. Although the MER supports these mental symptoms they do not appear to be at a level of severity that would preclude work activity. At this time the initial decision appears appropriate." R. 92, 100.

## V.  DISCUSSION

### A.  RFC and Opinion Evidence

Plaintiff argues that the ALJ failed to properly consider the opinions of the reviewing state agency psychological consultants, resulting in a flawed RFC determination., Pl.'s Mem., pp. 11–16; Pl.'s Reply, pp. 2–4. For the reasons that follow, this Court disagrees.

For claims filed after March 27, 2017,[4] the Commissioner's regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. §§ 404.1527, 416.927 *with* 20 C.F.R. §§ 404.1520c(a), 416.927c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider

---

[4] As previously noted, Plaintiff's claims were filed on July 12, 2021.

the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

The regulations emphasize that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at §§ 404.1520c(a), 416.920c(a). As to the supportability factor, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. at §§ 404.1520c(c)(1), 416.920c(c)(1). As to the consistency factor, the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. at §§ 404.1520c(c)(2), 416.920c(c)(2).

The applicable regulations further require the ALJ to articulate his or her "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id*. at §§ 404.1520c(b), 416.920c(b). As previously noted, "[s]upportability and consistency are the most important

factors. . . . ALJs need not explain their determinations regarding the other factors, but they must discuss supportability and consistency." *Gongon v. Kijakazi*, 676 F. Supp. 3d 383, 394 (E.D. Pa. 2023) (citations omitted); *see also Stamm v. Kijakazi*, 577 F. Supp. 3d 358, 370 (M.D. Pa. 2021) ("Generally, the ALJ may, but is not required to, explain his or her consideration of the other factors, but if there are two equally persuasive medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other factors."). Finally, the ALJ "need not reiterate the magic words 'support' and 'consistent' for each doctor" in order to satisfy the articulation requirements for the supportability and consistency factors, providing that the judge "weave[s] supportability and consistency throughout her analysis of which doctors were persuasive." *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024).

At step four of the sequential evaluation, the ALJ determined that Plaintiff had the RFC to perform a limited range of light work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: no more than occasional climbing of ramps, stairs, and ladders; no more than frequent balancing and stooping; no more than occasional crawling, kneeling, and crouching; she is able to understand and perform simple and detailed job tasks but is unable to perform complex job tasks.

R. 19. In making this determination, the ALJ considered, but discounted in part, the opinions from the state agency reviewing psychological consultants, Dr. Liberant and Dr. Plasay:

> When evaluating the functional limitations related to the claimant's psychiatric impairments, the undersigned found the opinions of the State agency psychological consultants partially persuasive (Ex. B4A-B9A). These reviewing consultants found that the claimant's depressive disorder was severe but not at a level of severity that would preclude all work activity. According to the psychological consultants, the claimant could follow simple instructions, and sustain the mental pace, persistence, concentration, and attention for simple repetitive tasks. These reviewing consultants focused their medical rationale on the claimant's mental status examinations from the March 2022 consultative examination, her history of

14

minimal psychiatric treatment, and her functional activities of daily living. The record evidence as expanded at the time of the hearing does not show any worsening of the claimant's psychiatric status to support the need for greater functional limitations. However, after reviewing the record evidence as a whole, with careful consideration granted to the historically normal reviews of her psychiatric status during the regular course of treatment the undersigned finds that the claimant has greater mental functional capacity. The restriction to simple and detailed jobs tasks but not complex job tasks is more consistent with her historical clinical presentation and functional activities of daily living.

R. 24.

Plaintiff contends that although the State agency psychologists both opined that Plaintiff was able to follow "simple" instructions and maintain the mental pace and concentration to perform "simple repetitive tasks," the ALJ determined that Plaintiff had the mental RFC to perform "simple and detailed job tasks, but not complex job tasks." Pl.'s Mem., p. 12; Plaintiff contends that she was found not disabled based on the testimony of the vocational expert that she could perform work as a retail salesclerk under the hypothetical assumption that plaintiff was an individual who could "understand and perform simple and detailed but not complex job tasks." R. 45. Plaintiff contends that the vocational expert was not asked whether Plaintiff could perform her past work if she was limited to only "simple" tasks as noted by Drs. Liberant and Plasay.  Pl.'s Mem., p. 12.

Plaintiff contends that the ALJ failed to explain why the state agency consultants' explanations did not support their opinion and provided no citation to the record. Pl.'s Mem., pp. 13–14; Pl.'s Reply, pp. 2–4 (citing, *inter alia*, *Maria R. v. Kijakazi*, No. 2:20-cv-10264, 2022 WL 714737, at *7 (D.N.J. Mar. 10, 2022)). In challenging the ALJ's supportability analysis, Plaintiff  notes that the ALJ recognized that  that these consultants focused on her mental status examinations from March 2022, her history of minimal psychiatric treatment, and her  daily life activities, but she contends that "[m]any of the daily activities cit[]ed offer no insight on

15

Plaintiff's ability to perform more than simple work." Pl.'s Mem., p. 14; *see also* Pl.'s Reply, p. 3 (contending that Plaintiff's activities of daily living "support rather than detract from her disability").

Plaintiff also contends that the opinions of Drs. Liberant and Plasay are consistent with other record evidence, including Dr. Williamson's consultative examination. Pl.'s Mem., p. 15. They rely on Dr. Williamson's observation that Plaintiff's mood was "depressed and anxious and she appeared to be in despair," as well as his finding that Plaintiff "appeared physically uncomfortable," "could not complete serial 7's," with dull abstract reasoning. *Id.*, p. 14. Plaintiff questions why the ALJ failed to explain how Dr. Plasay's and Dr. Liberant's opinions were not sufficiently supported, arguing that the ALJ's error in evaluating their opinions is not harmless because Plaintiff "likely cannot [] perform[]" her past relevant work of salesclerk "if limited to [the state agency restriction of] simple tasks given [that job has] the reasoning level of three." *Id.* at 16; *see also id.* at 12-13 (noting that the job of retail sales clerk which involves detailed tasks requires a reasoning level of three (1991 WL 672554) and citing *Meloni v. Colvin*, 109 F. Supp. 3d 734, 743 (M.D. Pa. 2015) (holding that "[i]f a reasoning level of two requires carrying out detailed instructions, then a reasoning level of three also requires the ability to carry out detailed instructions.") Plaintiff contends that here "[t]he RFC allows for detailed job tasks, whereas the opinions from Drs. Liberant and Plasay allow only for simple repetitive tasks" and that the vocational expert "was never asked is [sic] someone who was only limited to simple tasks, as should have been in the RFC and hypothetical question, can perform Plaintiff's past relevant work as a retail salesclerk".

A review of the ALJ's opinion demonstrates that he provided a reasoned explanation for his supportability determination. As a preliminary matter, the ALJ expressly acknowledged the

governing regulations, 20 C.F.R. §§ 404.1520c, 416.920c, at step four before evaluating the

opinion evidence. R. 19. As to supportability, the ALJ recognized that the state agency

consultants relied on Dr. Williamson's consultative examination, the history of minimal

psychiatric treatment, and her functional activities of daily living. R. 24; *see also* 20 C.F.R. §§

404.1520c(c)(1) (providing that the supportability factor addresses "objective medical evidence

and supporting explanations" presented by a medical source to support that source's opinion),

416.920c(c)(1) (same). While Plaintiff complains that the ALJ did not cite to the record or

explain in his analysis why the state agency consultants' opinions were not supported, a reading

of the ALJ's detailed and thorough discussion as a whole reflects his consideration in this regard.

As an initial matter, the ALJ found that Dr. Williamson's findings were only "somewhat

persuasive" and "minimally persuasive[,]" citing  Plaintiff's generally unremarkable psychiatric

examinations and limited treatment history and finding that these undermined that examiner's

conclusion that Plaintiff's prognosis was guarded due to the chronicity and severity of her

symptom presentation:

> Lastly, the undersigned found the opinions of consultative examiner, Christopher Williamson, Psy.D., only somewhat persuasive. In March 2022 Dr. Williamson opined that the claimant met the diagnostic criteria for major depressive disorder, recurrent and panic disorder (Id.). In his conclusionary comments he opined that the claimant's overall prognosis remains guarded due to the chronicity and severity of her symptom presentation. This statement is not a medical opinion or function by function assessment. The undersigned also finds this statement inconsistent with claimant 's unremarkable psychiatric examinations during the regular course of treatment and her history of limited treatment consisting entirely of one medication (Zoloft) prescribed by her primary care physician. The undersigned also notes that the claimant has no history of psychiatric hospitalizations, emergency room visits, or intensive psychiatric treatment at any time relevant to this application for benefits. Furthermore, her medication regimen of Zoloft has remained stable for the entire period under review, a factor that suggests her medical providers found this course of treatment effective at alleviating her symptoms. Lastly, and persuasively the clinical assessment of record do not reveal any deterioration of the claimant[']s psychiatric status that would support the severity and chronicity of symptoms

suggested by Dr. Williamson. Based on these factors, the undersigned finds the statements of Dr. Williamson minimally persuasive.

R. 24–25.

In further explaining why he discounted Dr. Williamson's findings, the ALJ highlighted that Plaintiff's medication regimen of Zoloft was stable throughout the relevant period (suggesting that her medical providers found it "effective at alleviating her symptoms") and that the record did not reveal any deterioration in Plaintiff's psychiatric status "that would support the severity and chronicity of symptoms suggested by Dr. Williamson." *Id*. at 25. A fair reading of this discussion, along with the ALJ's analysis of the state agency opinions, reflects that the ALJ reasonably found that Dr. Williamson's examination—which the ALJ discounted as only minimally persuasive —and Plaintiff's limited treatment history did not support the more restrictive opinions of Drs. Liberant and Plasay. R. 24–25; *see also Zaborowski*, 115 F.4th at 639; *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) ("The ALJ, of course, need not employ particular 'magic' words: '*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis.'") (quoting *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004)); *Serrano v. Kijakazi*, No. CV 20-3985, 2021 WL 4477137, at *3–4 (E.D. Pa. Sept. 30, 2021) ("In this case, the ALJ discussed and analyzed the evidence extensively before determining the persuasiveness of the medical opinions. . . . The ALJ was not required to repeat this information for the sake of elaborating on her findings of persuasiveness.").[5]

---

[5] In this respect, this case is distinguishable from *Maria R.*, 2022 WL 714737, upon which Plaintiff relies. In *Maria R.*, the Court expressly considered the discussion of the record evidence by the ALJ but concluded that the ALJ's discussion was insufficient to support the ALJ's conclusory consideration of the regulatory factors. *See Maria R.*, 2022 WL 714737, at *7 ("Although the ALJ detailed evidence relating to Plaintiff's mental impairments, it is not apparent from this recitation of the longitudinal record why the record does not, 'as a whole[,]'

18

While Plaintiff insists that "[m]any" of her daily activities cited by the state agency provide "no insight" into her ability to perform more than simple work and, in fact, "support" her alleged disability, Pl.'s Mem., p. 14 (stating that the consultants noted that Plaintiff "is always in pain. She is depressed and anxious. able to care [for] animals. Self care affected by pain. Makes frozen meals. Lives alone and able to clean but does it rarely") (quoting R. 82, 100) (internal quotation marks omitted); Pl.'s Reply, p. 3 (same), she selectively highlights certain activities while omitting others. *See id.*  Notably, Plaintiff omits in her recitation that state agency consultants acknowledged that Plaintiff has an "active" driver's license and is "[a]ble to drive a car" and is "[a]ble to pay bills/manage money." R. 74, 82, 92, 100. The ALJ implicitly—and reasonably—found that such daily activities did not support the more restrictive state agency mental limitations. R. 24, 74, 82, 92, 100; *see also Celento v. Comm'r Soc. Sec.*, 613 F. App'x 205, 206–07 (3d Cir. 2015) (noting that daily activities such as, *inter alia*, driving "require at least some . . . mental concentration"); *cf. D.C. v. Comm'r of Soc. Sec.*, No. CV 20-2484, 2021 WL 1851830, at *6 (D.N.J. May 10, 2021) ("*Her ability to drive*, prepare meals, *manage funds*, shop, and take a cruise *also contradicted her claims that she had difficulty concentrating, remembering information*, and engaging in social activities.") (emphasis added). Plaintiff's argument, therefore, boils down to nothing more than a disagreement with the ALJ's reasoning, which the Court has already explained has substantial support. *See Perkins v. Barnhart*, 79 F.

---

support Dr. Tamagnini's opinion. . . . Yet, the ALJ did not explain—nor is it apparent to the Court—how this [longitudinal] evidence is inconsistent with Dr. Tamagnini's opinions.") (citations omitted). In the case presently before this Court, and for the reasons previously discussed, this Court concludes that  the ALJ's discussion of the longitudinal record permits meaningful review and provides substantial support for the ALJ's consideration of the opinion of Drs. Liberant and Plasay.

App'x 512, 514–15 (3d Cir. 2003) ("Perkins's argument here amounts to no more than a disagreement with the ALJ's decision, which is soundly supported by substantial evidence.").

To the extent that Plaintiff complains that the vocational expert "was never asked" a hypothetical as to whether someone limited to only simple repetitive tasks could perform Plaintiff's past relevant work as a retail salesclerk, Pl.'s Mem., p. 12, that argument is unavailing. As an initial matter, Plaintiff was represented by counsel during the administrative hearing and had the opportunity to interrogate the vocational expert, but did not ask that expert any questions. R. 32, 46.[6] Nor did counsel challenge that expert's credentials. *Id*. Plaintiff does not explain why her attorney was unable to or otherwise failed to ask a hypothetical question—which Plaintiff now deems important—to the vocational expert during the hearing. *See* Pl.'s Mem., pp. 12, 16. In any event, while Plaintiff complains that she "likely" could not perform her past relevant work if limited to only simple tasks, an ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005).

Here, the ALJ posed a hypothetical question to the vocational expert that assumed a claimant with Plaintiff's vocational profile and the RFC found by the ALJ. R. 19, 45. The vocational expert responded that such a person would be able to perform Plaintiff's past relevant work. R. 45. The vocational expert further affirmed that if limited to simple, routine, repetitive tasks, such restriction would preclude the ability to perform this past relevant work. *Id*. However, where the ALJ has sufficiently explained why he discounted the more restrictive state agency opined limitations, "'it would be error to include limitations not credibly established by the record when relying on a vocational expert's testimony to make a disability determination.'" *Phelps v. Colvin*, No. CV 15-3146, 2017 WL 2290829, at *14 (D.N.J. May 25, 2017) (quoting

---

[6] Plaintiff had different counsel representing her at the administrative proceeding. R. 32.

*Chiucchi v. Comm'r of Soc. Sec.*, No. 15-2460, 2016 U.S. Dist. LEXIS 173259, at *25 n.4, 2016 WL 7322788 (D.N.J. Dec. 15, 2016)); *cf. Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987) (stating that a "hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence") (citation omitted).

Plaintiff continues to challenge the ALJ's evaluation of the opinions of Drs. Liberant and Plasay by arguing that such opinions were, in fact, consistent with other record evidence. Pl.'s Mem., p. 15. This argument is also unavailing. First, as noted above, the ALJ expressly considered the consistency of those opinions and explained that the RFC "restriction to simple and detailed jobs tasks but not complex job tasks is more consistent with her historical clinical presentation and functional activities of daily living." R. 24; *see also* 20 C.F.R. §§ 404.1520c(c)(2) (providing that the consistency factor addresses how consistent a medical opinion is "with evidence from other medical sources and nonmedical sources") , 416.920c(c)(2) (same). Although the ALJ did not repeat the description of Plaintiff's historical clinical presentation for the sake of elaborating on consistency in that paragraph, he specifically considered at step four, *inter alia*, Plaintiff's generally normal mental examinations earlier in his discussion. R. 22 (reflecting a normal psychiatric status in December 2019; while having a sad and tearful mood and affect in July 2021, no further deficits were noted and the clinical assessments were unremarkable for any deterioration of her psychiatric status; in November 2022, an annual physical examination showed Plaintiff alert, oriented, and with normal cognition; in July 2023, an emergency room treatment record showed her alert, oriented to all spheres with no psychiatric abnormalities noted); *see also Zaborowski*, 115 F.4th at 639; *Diaz*, 577 F.3d at 504; *Serrano*, 2021 WL 4477137, at *3–4. Similarly, as previously discussed, the

21

ALJ expressly considered Plaintiff's daily activities, including, *inter alia*, her ability to drive a vehicle and managing money/paying bills, which reflected a greater mental capacity than that found by the state agency psychological consultants. R. 23–24. In short, substantial evidence supports the ALJ's consideration of the consistency of the state agency psychological opinions with other record evidence.

Next, in insisting that these opinions are consistent with other record evidence, Plaintiff selectively cites to treatment records from Tatyana Ponti, M.D. *Id*. Specifically, Plaintiff argues that the state agency opinions are "consistent with Dr. Ponti's examination [on December 3, 2019] noting an increase in symptoms after stopping Zoloft." *Id*. (citing R. 356–58, Exhibit 1F/1–3). However, the ALJ expressly considered this examination and noted that, despite Plaintiff's subjective report that her "symptoms are coming back" after she stopped taking Zoloft, her psychiatric status was described as normal. R. 22 ("Although the claimant reported having an increase in psychiatric symptoms, review of her psychiatric status showed her to have good insight and judgment, intact recent and remote memory recall, and normal mood and affect [(]Ex. B1F pg. 3[, R. 358].");  *see also* R. 18 (considering normal mental status examination in December 2019), 356 (reflecting Plaintiff's denial of "feeling down, depressed or hopeless, little interest or pleasure in doing things, irritability, anxiety and suicidal thoughts" during the December 2019 examination). Plaintiff also contends that, "on July 16, 2021, Dr. Ponti found Plaintiff's mood and affect sad and tearful and diagnosed worsening dysthymic disorder." Pl.'s Mem., p. 15 (citing R. 482). However, that examination also revealed that Plaintiff's judgment and insight were good; she denied suicidal ideation; and a depression screening assessment was negative. R. 481–82.

In any event, the Court "will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012) (citing *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986)); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) ("Courts are not permitted to reweigh the evidence or impose their own factual determinations [under the substantial evidence standard]."); *Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 880 (3d Cir. 2005) ("When 'presented with the not uncommon situation of conflicting medical evidence . . . [t]he trier of fact has the duty to resolve that conflict.'") (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)).

For all these reasons, this Court concludes that the ALJ's discussion of the longitudinal record permits meaningful review and provides substantial support for the ALJ's consideration of the state agency psychological opinions and his RFC determination. *See Zaborowski*, 115 F.4th at 639.

### B.    Subjective Statements

Plaintiff also challenges the ALJ's consideration of her subjective complaints, contending that the medical evidence supports these complaints. Pl.'s Mem., pp. 16–21. Plaintiff's arguments fail here as well.

"Subjective allegations of pain or other symptoms cannot alone establish a disability." *Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3d Cir. 2017) (citing 20 C.F.R. § 416.929(a)).  Instead, objective medical evidence must corroborate a claimant's subjective complaints. *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008) (citing 20 C.F.R. § 404.1529(a)).  Specifically, an ALJ must follow a two-step process in evaluating a claimant's subjective complaints. SSR 16-3p, 2016 WL 1119029 (March 16, 2016). First, the

ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id*. "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]" *Id*.; *see also Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) ("[Evaluation of the intensity and persistence of the pain or symptom and the extent to which it affects the ability to work] obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.") (citing 20 C.F.R. § 404.1529(c)). In conducting this evaluation, an ALJ must consider the objective medical evidence as well as other evidence relevant to a claimant's subjective symptoms. 20 C.F.R. § 404.1529(c)(3) (listing the following factors to consider: daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate pain or other symptoms; treatment, other than medication, currently received or have received for relief of pain or other symptoms; any measures currently used or have used to relieve pain or other symptoms; and other factors concerning your functional limitations and restrictions due to pain or other symptoms). Finally, an "ALJ has wide discretion to weigh the claimant's subjective complaints, *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983), and may discount them where they are unsupported by other relevant objective evidence." *Miller*, 719 F. App'x at 134 (citing 20 C.F.R. § 416.929(c)); *see also Izzo v. Comm'r of Soc. Sec.,* 186 F. App'x 280, 286 (3d Cir. 2006) ("[A] reviewing court typically defers to an ALJ's credibility determination so long as there is a

sufficient basis for the ALJ's decision to discredit a witness."). The ALJ's determination must "contain a thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of pain and the adjudicator's personal observations.  The rationale must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the individual's ability to work." *Schaudek v. Comm'r*, 181 F.3d 429, 433 (3rd Cir. 1999) (citing SSR 95-5P, SSR 96-7p).

Here, the ALJ followed this two-step evaluation process. The ALJ specifically considered Plaintiff's subjective complaints. R. 19–23. The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause symptoms, but that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." R. 20. In finding that her subjective complaints about the intensity, persistence, and limiting effects of her symptoms were inconsistent with the medical evidence of record, the ALJ, to support his findings, detailed years of medical evidence and record testimony regarding Plaintiff's physical impairments, noting that "[w]hile the record evidence corroborates a musculoskeletal history of back pain and surgical intervention, the objective medical findings, the claimant's course of treatment, and the clinical assessments of record remain consistent with a finding that she can sustain a range of light exertional work." R. 20; *see also* R. 21 ("Overall, this minimal course of treatment and objective medical findings fail to support the need for limitations beyond what is provided in the residual functional capacity for a reduced range of light work."). Specifically, the ALJ detailed that, primary care records from December 2019 and January 2020 show findings of normal gait and station with no musculoskeletal or neurological deficits. R. 20. The ALJ further notes that in late January 2020, Plaintiff sought emergency

treatment for lower back pain radiating to her left leg, but experienced a significant improvement in her pain with pain medications (a morphine injection). *Id*. Thereafter, there is no record containing any reference to low back pain complaints until August 2020. *Id*. At that time, an MRI of the lumbar spine revealed some abnormalities, but there was no dedicated course of treatment for back pain following this imaging until July 2021, when Plaintiff complained of pain and her medical providers recommended that she engage in moderate intensity regular exercise to manage symptoms. R. 20–21. Dr. Potashnik's orthopedic consultative examination in March 2022 did not provide any support for marked limitations in physical function; although Plaintiff complained of low back pain radiating to left leg and foot, she did not report any dedicated medical treatment for back pain. R. 21. The ALJ further cited a routine annual physical examination conducted in November 2022, that was unremarkable without any abnormalities, noting that there were no recommendations for treatment and no recurring medications for pain management. *Id*. While Plaintiff did receive emergency treatment for back pain in July 2023, she reported significant improvement in her pain after receiving a Lidoderm patch, Toraldol injection, and Valium, and she was discharged the same day with recommendations for medical follow up. *Id*. However, the record evidence as expanded at the hearing does not contain any subsequent record showing that Plaintiff complied with these recommendations for treatment. R. 20–21. The ALJ concluded that: "Overall, the claimant's clinical picture and consultative examination are consistent with limiting the claimant to the light exertion with non-exertional limitations addressing positional changes. These restrictions are reasonable to minimize the expected symptom exacerbation of his baseline pain, but they do not prevent her from performing light exertional work." R. 21-22; *see also* R. 23–24 (explaining why Dr. Potashnik's

findings were not entirely persuasive and why the opinion of a treating provider, Emanual Hiras, D.C., L.A.C., was not persuasive).

In addition, as detailed above, the ALJ considered Plaintiff's generally unremarkable mental status examinations throughout the relevant period. He explained why he discounted the more restricted opined limitations of the state agency psychological consultants and Dr. Williamson's more limited findings. R. 22–25; *see also* R. 23 ("The undersigned has considered the claimant's report of functioning in this area, but finds her ability to engage in functional activities of daily living consistent with the limitations set forth in the residual functional capacity."). In the view of this Court, this record provides substantial support for the ALJ's decision to discount Plaintiff's subjective statements as inconsistent with the record evidence. *See Miller*, 719 F. App'x at 134; *Schmidt v. Comm'r Soc. Sec.*, 465 F. App'x 193, 198 (3d Cir. 2012) (finding that the "ALJ explained his reasons for discrediting [the claimant's] subjective testimony and pointed to several objective medical findings that contradicted [the claimant's] subjective complaints" where the claimant underwent back surgery in 2007, and, thereafter, "there was objective medical evidence that did not support [the claimant's] subjective complaints of disabling pain[,]" including, *inter alia*, that Plaintiff's two physicians "continued to prescribe conservative care throughout this period"); *Izzo*, 186 F. App'x at 286; *Van Horn*, 717 F.2d at 873; *Welch v. Heckler*, 808 F.2d 264, 270 (3d Cir. 1986) (observing that a claimant's decision to stop taking pain medication that made him feel "tired and depressed" indicated that although his "pain may be constant and uncomfortable, it is not disabling or severe"); *cf. Phillips v. Barnhart*, 91 F. App'x 775, 782 (3d Cir. 2004) (considering the claimant's conservative treatment history following surgery as a factor that supported the ALJ's determination to discount the claimant's subjective complaints).

Plaintiff challenges the ALJ's finding in this regard by pointing to other evidence in the record regarding her physical impairments that she believes supports her subjective complaints regarding the intensity, persistence and limiting effects of her symptoms. Pl.'s Mem., pp. 18–21 (highlighting her hearing testimony discussing her back pain despite a history of two back surgeries, physical therapy, chiropractic care, and acupuncture; her complaint of back tightness in December 2019; emergency room treatment for pain in January 2020, and subjective pain complaint to Dr. Ponti that same month; the MRI taken in August 2020; Dr. Potashnik's March 2022 orthopedic findings; emergency treatment in July 2023; and the findings of Dr. Hiras) (citations omitted). However, as detailed above, the ALJ considered this evidence when evaluating Plaintiff's subjective complaints. R. 20–24. Although Plaintiff apparently disagrees with the ALJ's consideration of this evidence, her disagreement with the ALJ does not serve as a basis to reverse the ALJ's decision, which is supported by substantial evidence for the reasons already discussed. *See Perkins*, 79 F. App'x at 514–15. Moreover, while Plaintiff relies heavily on the opinion of Dr. Hira, Plaintiff's treating chiropractor, the ALJ explained why that opinion was not persuasive, R. 24,[7] a finding that Plaintiff does not substantively challenge. In any event,

---

[7] The ALJ detailed why he discounted this extreme opinion:

> The undersigned did not find the opinion of Emanuel Hiras, DC, LAC, the claimant's provider, persuasive. Mr. Hiras opined in July 2023 that the claimant has a less than sedentary exertional capacity, requires excessive off-task allowances, and the option to lie down or recline throughout the workday for a full 8hour workday (Ex. B10F). According to Mr. Hiras the claimant is unable to work an 8-hour workday even as the less than sedentary exertional capacity due to clinical findings of muscle spasms, limited range of motion of the lumbar spine, and history of interbody lumbar fusion (Id.). The undersigned finds this opinion unpersuasive because it is not supported by any accompanying medical treatment records from this provider. This opinion is also inconsistent with the medical evidence of record as discussed previously, which shows no history of dedicated medical treatment for low back pain or osteoarthritis since the alleged onset date of disability aside from two emergency room visits. These extreme limitations are not

28

as previously discussed, the Court will not re-weigh the evidence and "will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson*, 497 F. App'x at 201; *see also Messina v. Comm'r of Soc. Sec.*, No. 20-1884, 2021 WL 422444, at *3 (3d Cir. Feb. 8, 2021) ("Yet we cannot reweigh the evidence or make our own factual determinations."); *Chandler*, 667 F.3d at 359.

Finally, to the extent that Plaintiff insists that the ALJ's "characterization of minimal impairment is belied by medical imaging and objective findings[,]"Pl.'s Mem., p. 21, her argument misses the mark. Notably, "[a] diagnosis alone, however, does not demonstrate disability." *Foley v. Comm'r of Soc. Sec.*, 349 F. App'x 805, 808 (3d Cir. 2009) (citing *Petition of Sullivan*, 904 F.2d 826, 845 (3d Cir. 1990)); *cf. Phillips v. Barnhart*, 91 F. App'x 775, 780 (3d Cir. 2004) ("[The claimant's] argument incorrectly focuses on the diagnosis of an impairment rather than the functional limitations that result from that impairment. A diagnosis of impairment, by itself, does not establish entitlement to benefits under the Act"). Here, while the ALJ found at step two of the sequential evaluation that Plaintiff suffered from the severe impairments of, *inter alia*, lumbar spine disorder and osteoarthritis of the back, hands, hips, and knees, R. 16, the ALJ explained at step four, with specific consideration to x-rays and MRI evidence, why any functional limitations flowing from those impairments were not completely consistent with Plaintiff's subjective complaints and why they did not require different or greater restrictions in the RFC. R. 20–25.

---

assessed by any other medical provider and are inconsistent with the claimant's unremarkable clinical presentation during the regular course of treatment.

R. 24.

For all these reasons, the Court concludes that the ALJ sufficiently explained his reasoning in assessing Plaintiff's subjective complaints, and the ALJ's findings in this regard are supported by substantial evidence in the record and are therefore entitled to this Court's deference. *See* SSR 16-3p; *Miller*, 719 F. App'x at 134; *cf. Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x. 761, 765 (3d Cir. 2009) ("Credibility determinations as to a claimant's testimony regarding pain and other subjective complaints are for the ALJ to make.") (citing *Van Horn*, 717 F.2d at 873).

## VI.    CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Date:  April 29, 2026                         _s/Cheryl L. Pollak_
                                        CHERYL L. POLLAK
                                        UNITED STATES MAGISTRATE JUDGE